Judge Caes:
This case comes up on a supersedeas to a judgment of the General Court, rendered by default, against the clerk of Bedford county, for a forfeiture of $ 600, incurred by failing to pay the taxes received by him, from 1st September, 1819, to 1st September. 1.820. To this judgment, *222 several objections were stated in the argument, and others have occurred in our conferences on the case. I will briefly consider such of them as seem material.
The first is, that no motion lies for this forfeiture, none being given by the law of 1819, or any preceding law. If this objection be sound, it puts an end to the case at once. The act under which this motion was made, (like most others of the revisal of 1819,) was compiled of many separate acts; and the compilers have, with great accuracy, marked at the bottom of the page, the former acts and editions, from which each clause is taken; noting, by short explanations, where an alteration has been made, and, by inverted commas, where a new provision has been introduced. The 17th section, giving the forfeiture against clerks, and some other officers, is not noted either as a new provision, or an alteration, until we come to the proviso, which is marked by inverted commas. We are referred to the editions of 1799, 1803, and 1814, for the matter of which this section is composed. I have examined those laws, and find, that on the point we are now considering, they are substantially the same with this section. In prescribing the mode of recovery, the act of 1803 says, “to be recovered by the Auditor, on motion, in the General Court, with costs.” In the act of 1819, it is said, “recoverable with costs, by the Auditor, in the General,Court, for the use of the Commonwealth, after giving ten days notice;” the words “after giving ten days notice,” in the last act, seeming to have been put for “on motion,” in the first. If we look back to 1784, and follow the series down, we find, that the usual mode of recovery against delinquent collectors of the revenue, has been by motion. ' This is no slight indication of the Legislative mind on the subject; but without its aid, I think it clear, both from the words themselves, and the context, that a motion is given. There shall be a recovery says the law. How ? Not by debt, bill, plaint or information; but “after giving ten days notice.” Notice of what ? Why surely, notice, that for the failure *223 of the clerk to pay the taxes, an application (call it by what name you piease,) will be made to the'Court, for judgment against him, for the forfeiture incurred. This seems to my mind, the only rational mode of construing the law.
The next objection is, that “ no forfeiture could be incurred for failing to pay only;” for the words “failure therein,” relate to all the duties prescribed by the act, and not to part only. The act directs, that clerks, &c, shall, on or before the 15th day of December, in each year, account for, on oath, with the Auditor, and pay into the treasury, the taxes received, previous to the 1st day of September, in each year; and, on failure therein, it shall be lawful for the General Court to render judgment, &te. The law here imposes upon clerks two distinct duties, to be transacted with two different officers of the Commonwealth. To the Auditor, they are to render an account of the taxes received for the last year. This account must be sworn to, and must also have, annexed to it, the certificate of a commissioner, that he has compared the account with the books in the office of the clerks, and that it thence appears, that, all taxes by them received, are accounted for. Having done this, they have still to perform a duty vastly more important; a duty, to which this first was merely introductory, and ancillary; a mean to effect the end. They must pay the amount they have collected for the Commonwealth, to. the Treasurer. Both these duties, they are commanded to perform; and the penalty accrues “on failure therein.” Failure wherein ? Why, failure-to execute the duties enjoined; failure to comply with the'law. Two distinct duties being enjoined, to comply with the law, he must perform both. If he executes but one, has he not .left something undone, which the law commanded him to do ? And is there not “a failure therein ?” Suppose the statute .had said, the clerks shall account with the Auditor, on the 15th of December, annually, for the taxes received; and, on failure therein, should incur the penalty. Would not a failure'to account, be a failure therein ? Suppose it *224 had said, that clerks shall, by the 15th day of December, jn each year, pay to the Treasurer the taxes received, without more ? Would not a failure to pay, be a failure therein ? When then, the law says, that clerks shall both account and pay, if either be omitted, is there not equally a failure therein ? And may he not be said, most emphatically to fail, who, being commanded to account and pay, accounts only, but refuses to pay ? When the money is the sole end and aim of the proceeding; when it is indispensable to the support of the government, and so difficult to be wrung from the hands of its officers; and when, to effect this vital purpose, the law has said that the officer shall account and pay, under a penalty of $ 600; would it not be a strange construction to say, that if the officer does not account, he shall incur the penalty; but if he accounts, and shews $ 1000 in his hands, while he refuses to pay a cent, the penalty does not touch him ? Suppose I were to put into the hands of an individual, a number of bonds to collect; and to take from him a covenant, by which he bound himself to account with, and pay to, me, at the end of the year, whatever sums he should have collected. At the time agreed on, he comes and renders an account, by which it appears that he has collected every cent. “Very well,” I say to him, “you have rendered a fair account; but the most important point remains. Pay me the sum, which the account shews to be due.” He replies, “It is no part of my purpose to do that. ' There can be no failure, no breach of my covenant, unless I fail doth to account and pay; and I have fairly accounted.” Could he find a jury in the country, who would sanction this construction, on the plea of conditions performed, or covenants not broken ? I apprehend not. The rule, to be a good one, must work both ways. Suppose an officer, who receives a fixed salary from the Commonwealth, were to go to the Auditor for his warrant to the Treasurer, to pay him his quarter salary. The Auditor gives him a paper, stating that the Commonwealth owes him $ 600 for his services, *225 but adding that this is not to be considered a warrant for the payment thereof. The applicant is astonished. He says, “Sir, this is not what I want; I want the money.” “But,” replies the Auditor, “the Commonwealth has imposed taxes for the purpose of paying you officers. She has appointed collectors, and has passed laws, saying that they shall account for, and pay, her revenue, annually, under the penalty of $ 600. When, however, I move against them to recover that penalty for non-payment, the Courts decide, that there is no penalty incurred: that the account is the important matter, and that being now rendered, the mere failure to pay the money, is no breach of the law.” Now, if this be good law against the Commonwealth, it must bo good for her. “I have rendered you the account. I commit no breach of the law, in withholding the money.” I rather think the officers would not much relish this operation of the rule.
But it is said, when the clerk has accounted, there may Sic a proceeding against him, for the sum appearing due, and it is impossible to suppose that the Legislature meant to subject him to the penalty and the sum due also. To this, I answer, 1st, that the law is express that, that he shall both account and pay, to avoid the penalty: that this being so, we are not permitted to speculate upon the improbability of the Legislature’s intending to pass a law so cruel, and thence to conclude that it is not the law; it being our business dicers ct non dare, jus; nor does it come with a good grace from the clerk, to complain of the harshness of the law, when he might have avoided the penalty, by simply paying to the Commonwealth her money in his hands, or shewing, on the trial, a reasonable excuse for his failure; and when, by suffering the judgment to go without defence, lie has acknowledged that he has no excuse. The law being (to my understanding) thus positive, that a failure to pay, incurs the penalty; and this being a motion to enforce that penalty; I do not think it material, in this case, to examine, or decide, whether the clerk is also liable to another *226 proceeding for the amount, which may appear due on the acc0unt rendered. It is coram non judice. If it were before us, I should refer to Nicholas v. the Auditor, 2 Munf. 31, to shew that such a proceeding might be had. With the hardship of the case, I humbly conceive we have nothing to do. We must execute the law. If it operates harshly, it will be for the power which has inflicted the wound, to administer the cure.
Again. It is objected that the notice and judgment are defective. The notice is, that a motion will be made, to recover of the clerk $600, that being the forfeiture incurred, by failing to pay the taxes received by him, as clerk of Bedford county, between the 1st of September, 1819, and the 1st of September, 1820. The judgment is upon this notice, and for the forfeiture of $ 600. If there were but one forfeiture under this act, I should think the judgment, though certainly informal, sufficient, with the aid of the notice, to protect the clerk from another judgment for the same penalty. But it is said, that there are two penalties inflicted by this act; one, under the 12th, the other, under the 17th section: that they are both for the sum of $600, and that it is impossible, from this record, to say for which penalty, the judgment is given. If the act gives two penalties, I acknowledge the full weight of the objection; and for the quarter whence it comes, I feel so high a respect, that I have felt bound to examine it with my best skill and judgment. The result has been, a strong conviction, that the act gives but one penalty, annually, for the failure of the clerk to perform the several duties imposed by it, on him. These duties are three, and they arise under the 1st, 12th, and 16th sections of the law. The first directs, that the taxes for licenses to sell goods, shall be paid to the sheriff or collector; and if there be no sheriff or collector, to the clerk, to be accounted for in like manner as other taxes by him received. But it will be observed, that this section evidently refers to another, for its regulation. The 12th section enacts, that no license for keeping *227 mi ordinary shall bo granted, until the tax be paid to the clerk, and the clerk shall account for and pay the same, into the treasury, at the same time, under the same penalties, and liable to the like recovery against him, in ease of delinquency, as are prescribed by law in respect to other taxes, to be collected and accounted for by him. Tins section, like the last, still points to some other part of the law, for its explanation and government. The 16th seeüon directs, that the tax on law process shall be paid to the clerks, before issuing the process. Then comes *ho 17th section, regulating the whole proceeding against the clerk. “ The clerks shall, &c. account for, &c. and pay into the treasury, the amount of taxes by them received, in pursuance of—what? The 1st, 12th or any particular section ? No! In pursuance of the present or any future act or acts, imposing taxes for support of government; and on failure therein, that is, on failure to account for and pay, the taxes received under the whole act, the General Court shall render judgment against them for a forfeiture of $ 600. From this analysis of the law, it is to me clear, that the 1st, 12th, and 16th sections, arealike referred to in the 17th: that this last consolidates the whole proceeding into one: that it commands the clerks to render one account to the Auditor, for all the taxes received in the year, under the whole act: that it directs .them to pay these taxes into the treasury; and for the failure to account for and pay, these taxes, or any part of them, subjects them to one penalty every year, of #600. This, which is so strongly expressed by the words of the law, stands also upon the strongest reason. The clerk was alike liable for all the taxes he received. Why cut it up into three accounts, and subject him to the trouble, vexation and expense of three separate notices, motions, defences and judgments?
Another doubt was expressed as to this notice; whether it was special enough; whether it ought not to have stated, for which particular delimit it was intended to prosecute; *228 whether for not paying the tax on tavern licenses, or law process ? And it was suggested, that if it had been stated (f°r instance) that the delinquency was in failing to pay the tax on tavern licenses, the clerk might have comeprepared to shew, that no such license had issued during the year. The answer to all this seems to me to be, that the notice puts the whole in issue; charges him with a total failure to pay the taxes received between the 1st of September, 1819, and the 1st of September, 1820; and that, therefore, he had notice to be prepared on every point. If he failed in any one, the penalty accrued; and as to his shewing that no licenses had issued,' he might have done that equally under the general, as under a special notice. The 14th section directs, that the commissioners shall take a list of the tavern licenses, and send it to the Auditor, and that this shall be evidence in all motions against a delinquent clerk, under this act. To this evidence, the Auditor would have to recur, in any motion against the clerk; and it seems to me, that for all substantial purposes of defence, the notice is special enough. It follows the words of the law.
I do not think it would be worth while for us to reverse the judgment, merely to enter one more formal; and am therefore for affirming the judgment.
Judge Cheek:
I readily admit that the main object of the Legislature, in imposing a penalty of $ GOO on a clerk for failing to account for and pay the taxes received by him, was to co-erce the rendering of the account. But there was another object expressed in the terms of the act; to enforce the payment of the money. This, although a subordinate object, was yet one which the Legislature might enforce, by any sanctions that they thought proper to provide. The act in effect, declares that a penally shall be incurred by the clerk, for not doing what the act requires him to do; and *229 that is, to account and pay. If he accounts, and does not pay, he has not done what the statute requires to be done; and the penalty is incurred. I cannot think that the statute can receive the same construction, as if the direction to pay was expunged from the act. -
I concur with the Judge who has preceded me, that the judgment should be affirmed.
Judge Coaltee:
The judgment in this case is very imperfect in not stating, for what cause the fine is imposed; and being a summary proceeding, and that under a highly penal statute, the ground of the judgment, and that it is sanctioned by law, ought to appear. No one can pretend, that the judgment itself, in the form in which it is entered, can be supported; and unless we can so amend it by the notice copied into the record, as to give it the appearance of conforming to the act under which it is said to have been rendered, it cannot be sustained. But the utmost extent to which this amendment will go, will be, to suppose that the judgment had stated on its face, that it was for a fine of-$5 600 against the appellant, as clerk of Bedford county, for the non-payment of taxes received by him. Here we must stop in our amendment, as the notice carries us no farther; and then, by conjecture, make out that it was for the non-payment of the taxes received by him on lato process. This conjecture we form in this way. The law says, that the clerks of the several County Courts, Superior Courts of Law, and keeper of the public seals, shall, on or before the 15th day of December, in every year, account for, on oath, with the Auditor, and pay into the treasury, the several amounts of taxes by them respectively received, previous to the 1st day of September in each year, in pursuance of the present or any future act imposing taxes, deducting live per cent, for commissions, Sse. and, on failure therein, it shall be lawful for the General Court to render judg *230 ment against the said clerks, keeper of the public seals, or any 0f them so failing, for a penalty; that is to say, a clerk, for such failure, shall forfeit and pay $ 600; and keeper of the public seals, @150; which penalties shall be recoverable with costs, by the Auditor, in the General Court, for the use of the Commonwealth, after giving ten days notice. Provided, that this section shall be so construed as to authorise the Auditor to proceed against any clerk for an additional fine of $ 600, for every year, during his failure to account and pay.
This section in the act of 1819, (1 Rev. Code, 44, § 17,) is taken from the act which exclusively related to taxes received by the clerks, on law process; and therefore, it is not an improbable conjecture, that the judgment was obtained under this clause, and for the non-payment of the taxes on law process; but, nevertheless, this may not be the fact.
The 12th section of the same act provides, that no Court shall grant to any person, a license to keep an ordinary or house of private entertainment, until such person shall pay to the clerk of such Court, the tax by law imposed on such license; and the said clerks shall account for and pay the ' same into the treasury, at the same time, under the same penalties, be liable to the like recovery against them, in case of delinquency, and be allowed the same commissions, as are prescribed by law in respect to other taxes, to be collected and accounted for by them. Now this clause either authorises a fine of @ 600, for a failure to account for and pay these taxes; or it simply means, that the clerk shall be liable to a judgment for the money so received by him, and not accounted for and paid, with the same damages, by way of penalty, as in cases of other taxes received by the clerks.
Without deciding this point, (and though the words of the law, account and pay, Sic. at the same time, under the same penalties, be liable to like recovery, &c. are very strong against me,) I incline to the latter opinion. I do *231 ibis for two reasons; one from my unwillingness, as hereafter more fully expressed, to charge the Legislature with an unreasonable accumulation of fines and punishments for the same offence; the other, because the 13th section requires the clerks annually, on or before the 1st day of October, to return to the Auditor a list of all licenses granted to tavern-keepers, hawkers and pedlars, &c. by their respective Courts previous to the 1st day of September, in every year, ike. and every clerk neglecting this duty, shall forfeit $50: to be recovered in the General Court, by motion, on ten days notice. Now this return would shew the Auditor, what the clerk was chargeable with, on account of such licenses; and this return was also necessary to enable him properly to charge the sheriffs and sergeants of corporations, with the taxes received by them from hawkers and pedlars, &tc. So that if I am not right, here would be $ 600 fine on the clerks, under the 12th section; $50, under the 13th; and $600, under the 17th, first above cited. Now, though my present impression is, that a fine of $600 could not be recovered under the 12th section; yet the words arc so strong in favor of it, that I do not see how we can say, from this record, whether the judgment is under the 12th or 17th section. It may, as it appears to me, be under either; and how then are we to say, whefher it is a judgment according to law, or not ?
It may be said, that the 17th section embraces all taxes receivable by the clerks; and although the original law, which is copied into the 12th section, gave such additional fine, that the object of the Legislature, by the act of 1819, § 17, was to limit the recovery to one fine. But this is grounded on the supposition, that the original law imposed an additional fine. But suppose, as I have supposed, that it did not impose such additional fine; then the question would recur; did the Legislature intend, by the 17th section, to impose a fine of $600, for not accounting for and paying the taxes received on ordinary licenses; so that if this notice had been confined to the non-payment of those *232 taxes, the fine could be recovered under the 17th section? This I should much doubt, especially if no such fine had been intended by the original law, copied into the 12th seeti°n as aforesaid. This question would have been fairly before the General Court and this Court, and the parties heard on it, had the motion been confined to that delinquency. It may be for that delinquency only, though the notice is broad enough to extend to either, or to both delinquencies. It is for this uncertainty in the notice, (and because in these summary proceedings we require something answering to, or in lieu of a declaration presenting the object and ground of the motion, to enable the Court to judge of the legality of the demand,) that I make this objection. This fine was originally recoverable by motion. By the act of 1814, it was made recoverable by action of debt, information, or indictment; and though I am willing to admit, that the act of 1819, intended to restore the motion, if that had been taken away by the act of 1814; yet I think few lawyers would contend, that an information containing no more specific charge than this notice, could be sustained.
But suppose we have, by conjecture and otherwise, am'ended the judgment, so that it shall be considered as one under the 17th section of the law, and relates to taxes on law process, we cannot amend the notice and judgment both, so as to make the delinquency intended to be punished, consist, as well in not accounting as in not paying. It is for the latter only that the notice goes. The case must be decided, then, on this ground; and be considered as if it appeared to us, that the appellant had returned his account on oath, duly certified by a commissioner, but had failed to pay some % 40 or $ 50 due thereon; and that the Auditor, instead of proceeding against him for the money due, has proceeded for a fine of $ 600 for the failure to pay it. If the appellant can be thus punished for a failure iopay only, the fine may also be repeated from year to year. Nay, the Auditor may move, at one and the *233 same time, for the fine, and for the money, with 15 per cent, damages thereon, by way of further punishment; so as in fact, to punish him twice, and that heavily, for the same offence; I do not mean simply, by two or more fines of § 600, but by two penalties of different kinds; which, if it was intended by the Legislature, is, to say the least, not usual.
It appears to me, that the object of the law, in imposing this heavy penalty, was, to force the clerks to render their accounts; so that the Auditor might know what sum is demandable of them. The correctness of such account depended, in a great measure, on themselves; for though a commissioner of the revenue is to certify their accounts, the clerks might easily deceive them; and therefore, an oath is also required. The original law of 1784, imposing taxes upon law process, required the clerks to account for, on oath, to the Auditor, and pay into the treasury, the taxes so received, deducting a commission of 5 per cent. “ and in case oí fraud herein, by any clerk, he shall, on conviction thereof, be deprived of his office.” This is the law now. 1 Rev. Code, 274, § 7.
Now, though he is required by this law, both to account and pay, no one, I presume, would say, that if he accounted without fraud, he was to be deprived of his office, if he did not pay. When subsequent laws added the penalty of §600, where no account was rendered at all, and of course, no fraud in making out an account imputable, they pursue the words in the original act, that they shall account on oath, and pay, fee. But still I apprehend, that in these, as well as in the original law, the great object was to force die rendering of an account. If the account is returned, ¡vas it the object of the law to give the double remedy, of ft fine of §600; which would he, most generally, six times the amount of the taxes, and, also a motion, with heavy damages, against the clerkf for the omission to pay ? I think not. The mischief did not require it. Much lets *234 did it require, that this fine should be repeated until payment, or that the double remedy should exist and be en» forced, at one and the same time. It would seem to me an unusual and excessive fine and punishment, contrary to the bill of rights, and the spirit of our institutions; and therefore, the law ought not to be so construed, unless such construction is imperatively forced upon us. It would be excessive, as bearing no proportion whatever to the nature of the offence, not even graduated by the amount due. It would be unusual; as, in relation to much greater defaulters, sheriffs, collectors, &c. of the public revenue, (the charge against whom, for their collections, is ascertained by the commissioner’s books,) no such fine is imposed for non-payment, but only 15 per cent, by way of damages or punishment for such default, and which consequently is graduated by the amount due.
Again: That part of the section, which authorises a repetition of the fine, is for every year, during his failure to account and pay, which seems to me to require a faL lure in both particulars. He cannot pay without accounting, but he may account without paying; and the remedy by motion, for the money, is given in the latter case. No motion can be made, but for the sum due; which must appear by the account. When that is returned, then the remedy by motion is plain and easy. The clerk, it is true, might be reached for the money, without rendering his account; but that would be by a tedious suit; and, therefore, the law, by severe penalties, forces the account; after which, the remedy for the money is plain and easy. And the question is, whether it is a just interpretation of the will of the Legislature, imperatively forced upon us, to suppose they intended that a double and co-existing remedy for this money, should exist; one by a heavy fine, to be repeated from year to year, and one by motion, both of which might be enforced at the same time, or not?
I have before .aid that that remedy was by motion fox* the amount, with 15 per cent, damages. In this, ho we *235 ■ver, I may be mistaken; and am not to be considered as giving any opinion thereon. It will, I presume, depend on the construction of the 63d section of the act, “reducing into one, the several acts prescribing the mode of ascertaining the taxable property within the Commonwealth, and of collecting the public revenue,” 2 Rev. Code, p. 33; and whether a clerk is a collector of public taxes within the meaning of that section; or there may be some other law on this subject, (though I have not as yet been able to discover any such) in express terms, giving a motion against a clerk, for the taxes appearing due on his account; and I have doubts whether a motion would lie against him, under that section. It is possible, that a doubt on that subject may have induced the Auditor, to endeavour to force a payment, by resorting to the fine. It is enough for my argument, that since the act inflicting this penalty was introduced into our Code, there was a remedy by motion for the taxes due, with 5 per cent, damages thereon; and in now ascertaining the intention of the Legislature, it is proper to take into view all laws in pari materia, which have, from time to time, been enacted.
In the case of Nicholas v. The Commonwealth, the penalty was inflicted, not for non-payment merely, but for failing to account and pay. It would seem, too, that in that case, judgments had been obtained for the several taxes also. But it does not appear, that he had accounted before the fines were inflicted. If that, however, had appeared, still it would have been an error at law, against which equity could not have relieved; and on which, no opinion was, or could be, given by the Court, who decided that case. This question has, for the first time, been brought before this Court.
For these reasons, I think the judgment ought to be reversed, and the motion dismissed.
*236 Judge Cabell:
All summary remedies, iu derogation of the common ^aw’ must be strictly pursued; and although the formality of a declaration be dispensed with, yet the notice must give information, to a reasonable extent, of the cause for which a judgment is sought to be obtained. Nor can the defendant be made liable, farther than he is charged in the notice.
The notice to the clerk, in this case, is for a failure to pay the amount of taxes received by him. We must, therefore, take it, that he duly accounted for the taxes, and that his only failure, was a failure to pay them. And the question now is, whether a clerk, who has duly accounted for the taxes, is liable to the penalty of $ 600, for failing to pay them.
I. think the main object of the Legislature, in imposing the penalty, was, to force the clerks to render regular accounts of the taxes received by them. Without such accounts, the clerks could not make payment satisfactory to the public; nor could the public recover judgment against them for the amounts due; since it is obviously the intention of the Legislature, that the accounts rendered by the clerks should be the evidence of the demand against them. But the account being rendered, the amount due might be readily recovered as so much money received for the public, in the mode prescribed by law. If we examine our system of laws, in relation to this subject, we shall find one principle generally pervading the whole; that public officers, receiving money for the Commonwealth or for individuals, and unjustly holding it, are co-erced to pay it, not by arbitrary penalties, but by damages graduated according to the amount received, by a certain per centage thereon. This is a reasonable and just principle. But justice revolts at the idea of inflicting an arbitrary penalty, for the non-payment of money, without regard to the amount due; of inflicting the same penalty for the non-payment of one *237 dollar, and of one thousand. I cannot believe that the Legislature intended such injustice. My opinion is, that in imposing this penalty, they looked mainly to the accounts to be rendered by the clerks. It is necessary to the public, that such accounts should be rendered by the clerks; and it is a duty of easy performance. Regarding the rendition of the accounts as a single act of duty, the failure to perform it is the same in all clerks; and may, with propriety, be punished by the same penalty as to all. But in the present case, there has been no failure to account, but only a failure to pay; and I am clearly of opinion, that the penalty does not attach to such a failure.
But even if I entertained doubts on the subject, I would not execute a law so grievously penal as this is, farther than the letter would compel me; and the letter of the statute certainly requires that there shall be a failure to account, as well as a failure to pay.
I think the judgment should be reversed.
The President:
I understood Mr. Call’s argument very well, but confess I did not perceive its application to this case. If the Legislature requires of a party to do two things coupled together, and on failure therein, inflicts a penalty, as in the case of the clerks, I cannot see that he avoids the penalty by doing one only, as in this case, by accounting with the Auditor; as it is confessed he did, from the notice, though he failed to pay the money into the treasury. The difference is, between doing two things forbidden by the law, and failing to do two things commanded to be done by the law; between incurring a penalty, and avoiding one. As for example ;—If it had been the policy of the Legislature to forbid the clerk to account with the Auditor and to pay the taxes into the treasury; accounting with the Auditor only, would not incur the penalty. To incur it, he must commit the whole offence interdicted by Hie law; and not *238 only account with the Auditor, but pay the money into the treasmy. So, also, when two things are to be done, to avoid a penalty, he must do both. It is to the case of incurr*n& penalties, by doing things forbidden by the laws, that Mr. Call’s argument applies; and not to the case of avoiding a penalty, by failing to do the things commanded to be done.
The judgment against the appellant is certainly very informal; but as the notice is a part of the record, and ex« plains the nature of the judgment, it is a good bar to a motion for another penalty, for failing to pay any of the taxes collectable by the clerk, within the year to which it refers. I at first thought the notice too general; but for all that appears, it includes a failure to pay any of the taxes receivable by the clerk; and as but one penalty can be recovered, for failing to account and pay any part, or all, of the taxes received in the year specified in the judgment, it is suificiently particular, and: the judgment is to be affirmed.